SCHULER, Respondent, v. JOHNSON, Garnishee and Appellant.

(261 N. W. 905.)

(File No. 7777.   Opinion filed July 15, 1935.)

*Robert D. Jones,* of Milbank, for Appellant.

*J. G. McFarland,* of Watertown, for Respondent.

CAMPBELL, J. Plaintiff, Schuler, was the owner and holder of a promissory note given by defendant, Ed. A. Johnson, for money loaned. She recovered judgment thereon in the circuit court of Grant county, S. D., in October, 1930, in the sum of $1,712.50. An attempt to realize upon said judgment out of the cash surrender value of an insurance policy owned by the defendant was unsuccessful. See Schuler v. Johnson (1933) 61 S. D. 141, 246 N. W. 632.

At the time of commencing the action against Ed. A. Johnson to recover upon the promissory note, plaintiff caused garnishment process in the usual form to be served upon Arvid T. Johnson, a son of the defendant. The affidavit for garnishment was general in form as permitted by the statute (section 2454, R. C. 1919), and merely alleged that the affiant verily believed that the garnishee named "is indebted to, or has property, real or personal, in his possession or under his control belonging to the defendant," etc. The garnishee promptly disclosed, denying liability (section 2460, R. C. 1919). Upon this disclosure plaintiff elected to join issue (section 2464, R. C. 1919) and, upon the trial of such issues, findings, conclusions, and judgment were in favor of the garnishee and against the plaintiff, which judgment was entered in the circuit court in December, 1930. In March, 1931, a new trial in the garnishment proceedings was granted by the circuit judge. The issues involved in the garnishment were not brought on for retrial in the circuit court until April, 1934, upon which retrial findings and conclusions were in favor of the plaintiff and against the garnishee, and pursuant thereto a money judgment was entered in favor of the plaintiff and against the garnishee for $1,712.50, plus $460.60 interest, together with costs and disbursements, from which judgment and from a denial of his application for a new trial the garnishee has appealed to this court.

The judgment of the trial court was based in essence upon findings to the effect that shortly before the service of the garnishment process the principal defendant had sold and transferred to the garnishee certain real property in the city of Milbank, S. D., for the agreed consideration of $6,000, and that at the time of the

service of the garnishment process approximately $4,928.55 of the purchase price of said realty was still unpaid, and constituted a debt presently due from the garnishee to the principal defendant. Appellant maintains that the evidence does not justify these findings.

The evidence, as we gather it from the record, discloses a state of affairs which we think may be fairly set forth about as follows.

Shortly prior to the institution of the garnishment proceedings herein, the principal defendant Ed. A. Johnson was a man almost seventy years of age, residing upon his homestead, described as lots 8, 9, 10, and 11, block 59, in the city of Milbank. He had no income and no earning power. He had no property save only the insurance policy referred to in the case of Schuler v. Johnson, 61 S. D. 141, 246 N. W. 632, and his homestead. His wife had recently died. There remained of the family of the principal defendant his son, the garnishee, a single man who had always lived at home, and his daughters, who were supporting themselves and for the most part away from home. The son had already made some advances for his father by way of payment of insurance premiums, payment of taxes upon the homestead, and payment of funeral expenses for the deceased wife and mother. The family talked matters over, and, pursuant to a mutual agreement between them, the principal defendant, the father, conveyed the homestead to his son, the garnishee and appellant, by deed absolute. The son, upon his part, orally agreed that he would permit his father to continue to live and reside with him on the homestead, and that he would, so far as possible, make such advances as might be needed from time to time for the payment of his father's necessary living expenses, including doctor's and dentist's bills and matters of that sort that might arise, and also make advances for insurance premiums, taxes, etc. He never made any general agreement to pay the debts of his father, and he never made any agreement to make any cash payments to his father at any time save as he agreed to provide him with small sums from time to time for spending or pocket money. It was agreed also that the advances previously made by the garnishee-appellant should be taken into consideration, and his father executed notes to him for those amounts, which notes were not expected or intended to be paid by the father, but merely represented

acknowledgments on his part of advances made. The son agreed to continue such advances as circumstances might require and his ability permit during the lifetime of his father. It was agreed at the same time between the son and his sisters that, if the advances made up to the time of the father's death totaled $6,000, then the homestead should belong absolutely to the son, to the exclusion of any interest therein on the part of his sisters. If his advances had not reached the sum of $6,000, then the homestead should be his absolutely as between himself and his sisters upon his paying to them the difference between his advances and $6,000. On the other hand, if his advances should exceed $6,000, then his sisters should adjust with him upon the death of the father the difference between $6,000 and the total of his advances. Most of the testimony in the record regarding the matter is from the garnishee-appellant, who was examined several times concerning it during the course of various proceedings. It is true that he said that he had agreed to pay $6,000 for the property, and that he owed the difference between $6,000 and the advances made up to date, and in reply to some questions used other similar language. Upon a careful consideration of the entire record, however, we fail to find any evidence of an agreement on the part of the son to pay the father $6,000 in cash at any time or under any circumstances for this property. So far as we can discover, the oral agreement of the son was to make such advances as his father might require and he might be able to make during his father's lifetime, and the figure of $6,000 was material only with reference to the adjustment to be made between him and his sisters when the father died.

Assuming that the oral agreement of the son to make advances was enforceable according to its terms, nevertheless we find nothing in this record which indicates that the father at any time had any right to call upon the son for the payment of $6,000 or any other sum in money, and we do not think there was, in any proper sense of the words, a debt of $6,000 or any other sum due from the son to the father at any time. The father could not at any time, as we read this record, have instituted an action against the son and secured a money judgment for the difference between $6,000 and advances previously made. Appellant argues, and we think correctly, that the rights of the respondent creditor against the son cannot be better or more extensive than were the rights

of the father. Indeed, our statute specifically provides (section 2471, R. C. 1919, as amended by chapter 183, Laws 1925) that no judgment shall be rendered upon the liability of the garnishee arising by reason of any money or other thing owing from him to the defendant, "unless before judgment against the defendant it shall have become due absolutely and without depending on any future contingency." We do not think, upon the evidence in this case, that there was ever any money owing absolutely from the son to his father without depending on a future contingency.

Respondent does not very seriously question this contention of the appellant as an abstract proposition, but urges, as stated in her brief, "The rule contended for by appellant on this appeal does not apply where an evident fraudulent conveyance and transfer was made by the defendant to the garnishee on which a part of the consideration had not been paid." The difficulty with this contention of respondent is that the property conveyed by the father to the son in this case was unquestionably the father's homestead. There is no evidence in this record that the premises exceeded one acre in extent (section 459, R. C. 1919) or $5,000 in value. It is true that the appellant-garnishee and his sisters orally agreed one with another that, for the purposes of family adjustment as between themselves, at the time of the father's death, they would, in substance, regard the homestead as having a value of $6,000; but that is no proof of the value thereof for the purposes of a creditor seeking to claim an interest therein. It once appearing that property is the homestead of a grantor, a conveyance thereof cannot be deemed in fraud of his creditors, unless and until such creditors affirmatively establish that the property thus conveyed exceeded in value the permissible homestead exemption. Peck v. Peck (1927) 51 S. D. 157, 212 N. W. 872.

It is doubtless true that, if the owner of a homestead retains its until the time of his death, it becomes subject to the payment of his debts upon his decease, unless he leaves heirs who can claim a homestead right therein in their own behalf. In re Clouse's Estate (Botsford Lbr. Co. v. Clouse) (1934) 63 S. D. 147, 257 N. W. 106. It is likewise true that proceeds of a voluntary sale of the homestead, not for immediate reinvestment in another homestead, are not exempt as against creditors of the vendor if such sale is made and proceeds are received in such form and

fashion as to be reachable by creditors. Smith v. Hart (1926) 49 S. D. 582, 207 N. W. 657, 46 A. L. R. 811. That is not to say, however, that the owner and occupant of a homestead is under any obligation to keep it until his death so that his creditors may then reach it, or that he is obligated, if he disposes of it in his lifetime, to sell it for value or to obtain for it something which his creditors can reach. He may give it away if he desires or he may dispose of it, as was done in this case, in return for a promise to support, or some other contract or agreement not of a nature to benefit his creditors or be reachable by them, and he does not thereby defraud his creditors.

Upon the record in this case we can discover no liability upon the part of the garnishee-appellant to the respondent, and the judgment and order appealed from are therefore reversed.

WARREN, P. J., and ROBERTS and RUDOLPH, JJ., concur.

POLLEY, J., absent and not sitting.