NEW YORK LIFE INS. CO., Respondent v. HYDE, et al, Appellants (HOWELL, Intervener)

(4 N. W.2d 812.)

(File No. 8474. Opinion filed July 13, 1942.)
Rehearing Denied November 11, 1942

**Danforth & Danforth, T. R. Johnson,** and **T. G. Owen,** all of Sioux Falls, for Appellants.

**Sioux K. Grigsby** and **Roy E. Willy,** both of Sioux Falls, for Respondent.

SMITH, J.   The plaintiff, the New York Life Insurance Company is a judgment creditor of defendant Frank Hyde. It brought this proceeding in garnishment in aid of execution on its judgment and served two corporations, namely, the Frank Hyde Jewelry Company and the Frank Hyde Realty Company as garnishee defendants.   By their disclosures these garnishee defendants denied liability to Frank Hyde.   Thereafter Esther Hyde Howell who owns stock in each of these garnishee corporations intervened and asserted that the corporations were not indebted to Frank Hyde. The circuit court entered judgment against the corporate garnishees in substantial sums.   The appeal is by defendant Frank Hyde, the garnishee defendant corporations and the intervening stockholder.   Appropriate assignments of error question the sufficiency of the evidence to sustain the findings, the sufficiency of the findings to support the conclusions of law and judgment and the ruling of the court on certain requested findings and conclusions.

The Frank Hyde Realty Company and the Frank Hyde Jewelry Company are close family corporations.   The father Frank Hyde owns one share of capital stock in each corporation and the remaining shares are owned by his son Hadleigh D. Hyde and his daughter, the above-named interven-

er, Esther Hyde Howell. The board of directors of each of these respective corporations is made up of its three stockholders. Frank Hyde is president and Hadleigh Hyde is secretary of each corporation. For many years the daughter has resided in California and has taken no part in the corporate meetings or in the management or control of these corporations. The father, who was seventy-eight years old at the time of the trial, winters in California and exercises a minor role in the business when at home. The son exercises the major role in the management of both businesses. The issue arises over the validity of book entries crediting Frank Hyde with salary.

At the close of each fiscal year the public accountant who conducted the annual audit for these corporations determined the net profit of each company and thereafter the son caused the amount of that profit to be apportioned in equal shares and set up on the books of each company as salaries of the father and son, respectively. The amount that the court determined as due from each company to Frank Hyde represents the difference between the credits so set up and the actual withdrawals of Frank Hyde from each of the respective corporations during a period of years. It is established by the evidence that the actual withdrawals of Frank Hyde from each of the respective corporations exceeded the reasonable value of his services to that corporation. The daughter was called as a witness and testified that she had no knowledge of this practice of apportioning the profits of the corporation to her father and brother and that she did not know of the credit balance appearing on the books until after the commencement of this litigation.

The findings upon which the circuit court predicated a conclusion of liability may be epitomized as follows: That the daughter by her conduct had, during the years involved, surrendered her powers as a director and stockholder and had committed the management and control of the corporations to her father and brother; that acting under such delegated authority the father and son apportioned the bulk of the net profits in equal share to themselves as salaries; that the daughter had ample opportunity to investigate the af-

fairs of the corporations and to fully acquaint herself with these practices but failed so to do and by such conduct had ratified and acquiesced in the acts of the father and son.

The test in determining the liability of the garnishee defendant to the garnisheeing plaintiff is whether the facts would support a recovery by the principal defendant against the garnishee defendant. Schuler v. Johnson, 63 S. D. 542, 261 N. W. 905; Bank of Centerville v. Gelhaus, 60 S. D. 31, 242 N. W. 642, 83 A. L. R. 1380; Borgen v. Auguski, 51 S. D. 65, 212 N. W. 47. We therefore analyze the record to determine whether Frank Hyde could have recovered the amount of the questioned credits from the Frank Hyde Jewelry Company and the Frank Hyde Realty Company.

Plaintiff says that "the facts in this case bring it within the rule announced in the case of American National Bank v. Wheeler-Adams Auto Co., 31 S. D. 524, 141 N. W. 396." From the content of its findings and conclusions we gather that such was the view of the learned trial court.

In that case a third stockholder and director was held to have delegated the management and control of a corporation to the remaining two stockholders and directors. These two directors without formal corporate action executed and delivered a chattel mortgage on corporate property to the plaintiff bank for a valuable consideration. In its decision of the case this court said [31 S. D. 524, 141 N. W. 398]: "Such a course of conduct estops, not only the corporation, but its directors and stockholders, from questioning the validity of acts of its executive officers, performed in the usual and ordinary course of business and without fraud, to the detriment of third parties, who have acted in good faith and without notice of actual want of authority on the part of such executive officers." See Fletcher, § 509 and § 666.

The principle upon which that decision rests is not invoked by the established facts of this case. True the cases have one common factor of factual background in that all of those interested in the named corporations have clothed two of a board of three directors with ostensible authority

to bind the corporation. In other respects, however, the difference in their facts is vast. In the cited case the conduct of the interested parties induced a third person to change his position to his prejudice and consideration of natural justice impelled the raising of an estoppel. Frank Hyde occupies no such position. He is related to the corporation and its intervening stockholder as a fiduciary. The credit items involved represent unearned compensation which he and his associate fiduciary have purported to fix for their own benefit. It is not established that he has in any manner changed his position based upon these credits. Manifestly, he is in no position to claim that either the corporation or the intervening stockholder is estopped to challenge the verity of these items.

■■ It seems equally clear to us that the credits do not represent a valid indebtedness to Frank Hyde. Frank Hyde and his son, as indicated, occupied a fiduciary relationship to the corporation and its stockholders. In all their dealings they were required to place the interests of the corporation and its stockholders above their private interests. Whether they acted under their powers as directors or as general managers of the corporation under authority delegated to them by the stockholders and directors they continued to act as fiduciaries. We need not determine whether their delegated powers included authority to fix their own compensation. If such authority be conceded for the purposes of this opinion it would manifestly not embrace authority to bind the corporation to themselves for more than the reasonable value of the services rendered to the corporation. 13 Am. Jur. 985. As indicated it is established that the actual withdrawals of Frank Hyde from each of the respective garnishee corporations exceeded the reasonable value of his services to that corporation. Therefore no valid indebtedness remained and the credits on the books do not represent or reflect an enforceable indebtedness.

■ We are not unmindful that the record supports the inference and the court found that at the time Frank Hyde transferred the bulk of these corporation stocks to his children, it was agreed that he should receive support from

these corporations so long as he lived and that the record shows these parties to have interpreted this agreement as providing for the support of the father in some degree of luxury. Neither have we closed our minds to those adjudications which recognize the right of stockholders of a corporation by their mutual unanimous consent to do what they will with corporate property so long as third persons are not involved. Fletcher, § 46. However, the inference that the agreement of the three stockholders embraced more than support to the father from the corporation is not justified and it is conclusively established that he has currently received ample support. The questioned credits in our opinion gain no support from this agreement between the three stockholders.

■■ The court found "that the intervener herein, Esther Hyde Howell, does not come into equity with clean hands and that her Complaint in Intervention was not made in good faith for the purpose of asserting or maintaining any separate property rights against the said principal defendant, Frank Hyde, but on the contrary, such Complaint in Intervention was made solely by the said intervener, Esther Hyde Howell, at the instance and request of and under the direction and supervision of the said principal defendant, Frank Hyde, for the purpose of hindering, delaying and defrauding the creditors of the said Frank Hyde." We question the legal significance of this finding. We are familiar with the adjudications which hold that courts are not justified in lending themselves to the devices of scavengers and troublemakers who acquire small stockholdings for the purpose of instituting nuisance litigation. However, we have discovered no case where a court has applied that principle in a case where a substantial stockholder has instituted litigation and the industry of counsel has brought no such case to our attention. The motive of a stockholder in asserting the rights of the corporation is not generally held to constitute a defense. Fletcher, § 5877, and we do not deem the motives of Mrs. Howell as significant here. In any event the corporations are here and are asserting the same defenses pleaded by Mrs. Howell and no fact is found

by the learned trial court which estops these corporations from challenging the validity of the credits in question.

■ Although it is conceded that such transfers were made in good faith and are not subject to question as fraudulent transfers, the findings of the court and the briefs of counsel emphasize the fact that the corporate stock in the corporate garnishee defendants was transferred to the children by the father during the year 1931 without consideration, other than the agreement for support to which we have adverted. If these facts give rise to moral obligation on the part of the children and the corporation, it is not such an obligation as a court may enforce. Our function is to enforce legal rights and not to promote our private concepts of abstract justice.

■ The assignments embrace findings and conclusions dealing with an automobile purchased in the name of the Frank Hyde Jewelry Company by means of a check charged to the account of Frank Hyde. However, as that phase of the case has not been briefed by counsel, we do not feel justified in dealing with it.

Being convinced that the evidence does not support the finding that the corporations were indebted to Frank Hyde and that the findings made do not support the conclusions of law of the court and that for these reasons the case must be reversed, we do not find it necessary to discuss the other matters presented.

The judgment and order of the learned trial court are reversed.

All the Judges concur.