NITE OWL CORPORATION, Respondent

v.

MANAGEMENT SERVICES, INC., Defendant and
AGRICULTURAL INSURANCE CO., Garnishee Defendant
and Appellant

(173 N.W.2d 451)

(File No. 10674.  Opinion filed January 12, 1970)

Rehearing  denied  March  3,  1970

**Whiting, Lynn, Jackson, Freiberg & Shultz,** Rapid City, for garnishee defendant and appellant.

**William M. Rensch,** Rapid City, for plaintiff and respondent.

HANSON, Judge.

This is an appeal by the garnishee defendant, Agricultural Insurance Company, from a judgment ordering payment of $10,-962.84 plus interest to the plaintiff, Nite Owl Corporation.

The Nite Owl Corporation is a contractor performing work for the Boeing Company. On June 6, 1964 it entered into an agreement with the principal defendant, Management Services, Inc., to handle its accounts. Management Services is a bookkeeping and accounting concern. C. T. Baldwin was general manager. The agreement provided, among other things, that Management Services would: (1) Receive, disburse, and account for all funds transmitted to it by Nite Owl; (2) deposit all funds in a separate bank account designated "Management Services Inc. Trust Account No. N-2"; (3) not co-mingle the funds of this account with any other trust account, or with Management Services' own corporate funds; (4) retain such funds in the trust account until paid out directly on legitimate contract costs; and

(5) maintain a blanket fidelity bond on all employees as an added protection to the contractor.

Management Services maintained a blanket fidelity bond with the Agricultural Insurance Company containing the following insuring agreement: "The Underwriter * * * agrees to indemnify the Insured against any loss of money or other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others, to an amount not exceeding * * * [$50,000.00]."

Thereafter, Nite Owl assigned $159,674.42 to Management Services. On August 1, 1965 Nite Owl discovered $10,365.30 missing in its account. It filed a proof of loss with the Agricultural Insurance Company which investigated and rejected the claim. Nite Owl then commenced an action (File No. 4525) against the defendants, Management Services and C. T. Baldwin, for money had and received in the amount of $10,365.30. Management Services tendered the defense to the insurance company, but it refused to defend as the "claim therein stated does not fall within the terms of the coverage of the bond." In April, 1966 the action was tried to the court without a jury. The trial court found, in substance: (1) The defendant, C. T. Baldwin, was employed by the defendant, Management Services, as manager, and also was secretary of the corporation; (2) by virtue of their agreement Management Services received $159,674.-42, money belonging to Nite Owl, which was deposited in a trust account. Management Services was entitled to a commission of $2,441.56 for handling this money and the balance of $157,232.86 was to be used in payment of Nite Owl's construction contracts; (3) between March 11, 1965 and July 28, 1965 defendant, C. T. Baldwin, withdrew and fraudulently and dishonestly appropriated the sum of $10,365.30 from Nite Owl's trust account. The proof supported such findings. The trial court concluded Management Services and Baldwin were jointly and severally liable to the plaintiff in the amount of $10,365.30 plus interest from July 28, 1965. Judgment accordingly was entered.

On July 14, 1966 Nite Owl issued an execution on its judgment and commenced this garnishment proceeding against Agricultural Insurance Company, as garnishee defendant. The garnishee defendant denied liability and the issues were tried to the court. Agricultural Insurance was found liable as garnishee to plaintiff Nite Owl, as indemnitor on its bond, in the amount of plaintiff's judgment against the principal defendant, Management Services. Agricultural Insurance appeals from this judgment.

Not having been a party to the action between Nite Owl and Management Services the garnishee defendant contends it is not bound by the findings of fact and judgment entered in that action. Ordinarily this is true. However, Agricultural Insurance was not a stranger to the main action. It had notice and knowledge of plaintiff's claim. Proof of such loss was submitted to it including the checks used by Baldwin to withdraw the money from Nite Owl's Trust account. Defense of the action was tendered. It denied liability and refused to defend.

■ An exception to the general rule that the doctrine of res judicata does not bind strangers to a judgment exists in the case of persons liable over or derivatively responsible "at least where there has been notice to the third person and an opportunity to defend. This is true, in the absence of fraud or collusion, whether the third person is liable over by express contract or by operation of law, and whether the third person actually appears in the first action or not. * * * The doctrine of conclusiveness of judgments against persons liable over and persons derivatively responsible has been applied in the case of indemnitors and other persons responsible for the acts or obligations of others." 46 Am.Jur.2d, Judgments, § 551, pp. 713-714. This exception expressly applies to contracts of indemnity in this state by virtue of the following statutory provisions:

"Unless a contrary intention appears, the person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the in-

demnity; but the person indemnified has the right to conduct such defenses, if he chooses to do so." SDCL 1967 56-3-11.

"If, after request, the person indemnifying neglects to defend the person indemnified, unless a contrary intention appears, a recovery against the latter suffered by him in good faith, is conclusive in his favor against the former." SDCL 1967 56-3-12.

■ However, the garnishee defendant contends the reason why Management Services failed to account for Nite Owl's money was not an essential issue in an action for money had and received. Consequently, the finding that such money was fraudulently and dishonestly appropriated by the principal defendant's employee, C. T. Baldwin, was not binding on it. Assuming, without deciding, the merits of this contention then the findings and judgment in the main action would not be conclusive as to the existence and extent of the garnishee's obligation to indemnify. Proof to the contrary could have been made by the insurer in the subsequent garnishment action that the money was not, in fact, misappropriated by the principal defendant's employee or for some other reason the loss was not covered by the indemnity bond. Such proof was not offered or shown. See 46 Am.Jur.2d, Judgments, § 561, p. 722; 50 C.J.S. Judgments § 811, p. 360 et seq.; Restatement of Judgments, § 107 and comments thereunder. From the evidence produced the trial court again found that the sum of $10,365.30 of Nite Owl's money was "wrongfully and dishonestly appropriated and stolen" by Management Services' employee. Under the circumstances, the judgment in the main action, file No. 4525 became res judicata and binding upon the garnishee defendant. Citizens State Bank v. Interstate Surety Co., 43 S.D. 262, 178 N.W. 935; Mundt v. Messenger Pub. Co., 42 S.D. 608, 176 N.W. 740.

■ As garnishment is an ancillary remedy it was unnecessary for the trial court to formally take judicial notice of, or admit into evidence, the decision and judgment rendered in the principal action. The record in the garnishment action reflects the court did, in fact, take notice of the same.

■ The principal defendant, Management Services, commenced an action on the indemnity bond in question, Court File 4593, against Agricultural Insurance for the fraudulent or dishonest appropriation of corporate funds in the amount of $2,960.14 by its employee, C. T. Baldwin. The action was tried to a jury resulting in a verdict and judgment in favor of Management Services in the amount of $1,875.00. This judgment was entered on May 20, 1966. It was satisfied on July 8, 1966 by payment of the amount due. In consideration Management Services executed a "final release and discharge of any and all actions, claims and demands whatsoever, that may now exist, or may hereafter accrue, against the Agricultural Insurance Company by reason of the execution of the fidelity bond to said Management Services." The garnishee defendant further contends in the present action the judgment in court file 4593 and the release given in satisfaction constitute an absolute bar to Nite Owl's claim.

Before Management Services commenced action against Agricultural Insurance the insurance company had disclaimed liability for Nite Owl's claim and refused to defend against it. Therefore, the action by Management Services against Agricultural Insurance was apparently confined to corporate monies fraudulently appropriated by Baldwin and did not include trust funds belonging to Nite Owl.

By now contending the judgment and release in File No. 4593 is res judicata the insurance company in effect asserts that Management Services should not have relied on its disclaimer of liability and should have included Nite Owl's claim in action No. 4593. To so hold would allow the insurance company to take advantage of its own prior erroneous position. The release rests on even less firm ground. Both Management Services and the insurer had full knowledge of Nite Owl's claim which had been reduced to judgment at the time the release was executed. Management Services was defunct. Under the circumstances, Nite Owl's claim and judgment could not be avoided by this self-serving instrument by two debtors to the detriment of a known innocent creditor.

The trial court correctly held Agricultural Insurance was estopped from asserting either the judgment or the release as a bar to plaintiff's judgment. The doctrine of equitable estoppel or estoppel in pais was summarized in Security State Bank v. Gannon, 39 S.D. 232, 163 N.W. 1040, as follows: " 'A person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has in good faith relied thereon. Such an estoppel is founded on morality and justice, and especially concerns conscience and equity.' "

■ This court has said that a proceeding in garnishment is in effect an action by a defendant debtor in the plaintiff-creditor's name against the garnishee. Its purpose is to subrogate plaintiff to the rights of the defendant against the garnishee. The test in determining liability of the garnishee defendant to the garnisheeing plaintiff is whether or not the facts would support a recovery by the principal defendant against the garnishee defendant. Egland v. Neill, 75 S.D. 361, 65 N.W.2d 576; New York Life Ins. Co. v. Hyde, 68 S.D. 516, 4 N.W.2d 812. The plaintiff Nite Owl's claim meets this test and recovery against the insurer on its indemnity bond was properly allowed.

Affirmed.

All the Judges concur.