FARMERS UNION COOP
ASSOCIATION, Plaintiff
and Appellee,

v.

SCHLADWEILER BROTHERS,
INC., Defendant,

and

Blendon Township and Davison
County, South Dakota,
Garnishees,

James Schladweiler, Intervenor
and Appellant.

No. 16526.

Supreme Court of South Dakota.

Considered on Briefs Oct. 19, 1989.

Decided Nov. 29, 1989.

Lee D. Anderson of Stiles, Anderson & Swank, Mitchell, for plaintiff and appellee.

Paul J. Dold, Howard, for intervenor and appellant.

PER CURIAM.

### ACTION

James Schladweiler (Schladweiler) appeals a trial court order authorizing a garnishment of funds held by Blendon Township (Township) to satisfy a judgment taken by Farmers Union Coop (Coop) against Schladweiler Brothers, Inc. We affirm.

### FACTS

Prior to 1985, Schladweiler operated a gravel loading and trucking business as a sole proprietorship known as Ethan Construction. In January 1985, Schladweiler and his sons formed a corporation named Schladweiler Brothers, Inc. so that the sons could take over the gravel business. Schladweiler sold the business to the corporation in December 1985 and ceased his own gravel operation.

Schladweiler Brothers, Inc. operated the gravel business after 1985. In May 1987 the corporation's bank refused to extend further financing to the corporation. Although Schladweiler contends that the corporation ceased doing business at that time, it duly filed its annual report in February 1987 and there is no indication that dissolution proceedings under SDCL ch.

47–7 were ever undertaken by or against the corporation.

Coop had maintained a running account for goods and services delivered to Schladweiler prior to 1985. In December 1985, the account's name was changed to Schladweiler Brothers, Inc. when Schladweiler sold his business to the corporation. In April and May 1987, Coop delivered fuel and other goods to Schladweiler Brothers, Inc. which were not paid for.

On August 11, 1987, Township decided to have "Schladweiler" gravel four and one-half miles of roads. The services were performed and a bill for the services was issued on August 26, 1987 in the amount of $4,809.75. This bill was issued under the name "Schladweiler Construction." A second bill in the amount of $2,094.40 for loading and screening gravel was also issued to Township in August 1987. This bill was issued under the name "Ethan Construction."

On September 24, 1987, Coop took a default judgment against Schladweiler Brothers, Inc. for the balance due on its account plus costs and interest for a total of $6,707.79. In October 1987, Coop served a garnishment summons on Township requiring it to answer whether it had in its possession or control any property belonging to, "Schladweiler Bros., Inc., d/b/a Ethan Construction Company."

On November 20, 1987, Township filed its garnishee disclosure indicating its indebtedness for the gravel hauling services performed in August. The disclosure stated that Township was indebted to, "Schladweiler Brothers, Inc." in the amount of $4,809.75 and to "Ethan Construction Company" in the amount of $2,094.40. Township board minutes for November 20, 1987, contain authorization for payment of bills to "Schladweiler Construction" in the amount of $4,809.75 and to "Ethan Construction" in the amount of $2,094.40. Finally, Township vouchers dated November 20, 1987, authorize payment of $4,809.75 to "Schladweiler Construction" and $2,094.40 to "Ethan Construction."

Schladweiler subsequently intervened in Coop's garnishment action. Schladweiler contended that he had recommenced his own gravel operation in 1987 and that it was his own business that performed the gravel hauling services for Township in August. Accordingly, Schladweiler asserted that the funds owed by Township for these services were owed to his business and not to Schladweiler Brothers, Inc.

In support of his contentions, Schladweiler presented evidence by affidavit and testimony that in the second quarter of 1987 he recommenced filing employer's quarterly federal income tax returns and unemployment insurance reports and that in May 1987 he began reissuing payroll checks for his own business. Schladweiler also presented evidence that in November 1987 the corporation's bank conducted a sale of the collateral of Schladweiler Brothers, Inc., including its equipment, which he purchased. Additionally, Schladweiler presented some evidence that in December 1987 the bank assigned its security interest in unspecified collateral of the corporation to him in exchange for his payment of the corporate debt under the terms of his personal guaranty of the bank's loans to the corporation. Finally, Schladweiler showed that on December 11, 1987, he filed a fictitious name certificate disclosing that he would be operating a business under the name "Ethan Construction Company."

After a garnishment hearing on September 9, 1988, the trial court entered findings of fact and conclusions of law finding that Township believed that it was contracting with Schladweiler Brothers, Inc. for the gravel hauling services. The trial court concluded that the funds owed by Township for these services were, "assets owing to the corporation, Schladweiler Bros., Inc." Accordingly, the trial court entered an order directing that the sums owed by Township be paid over to the sheriff of Davison County for the benefit of Coop to be applied to Coop's judgment against Schladweiler Brothers, Inc. Schladweiler appeals.

### ISSUE 1

Whether the trial court was clearly erroneous in finding that Township was

indebted to Schladweiler Brothers, Inc. for the gravel hauling services rather than to Schladweiler individually?

■ Schladweiler attempts to argue this matter as a case of "piercing the corporate veil" contending that the trial court erred in holding him personally liable for a corporate debt. Such argument, however, presumes that the funds owed by Township were owed to Schladweiler individually and not to the corporation. This was not the finding of the trial court.

Additionally, Coop never sought to attach personal liability to Schladweiler for the corporation's account in its original action against the corporation. Schladweiler was never a named party in that suit. Rather, Coop took a judgment against the corporation and, in seeking satisfaction of its judgment, brought a garnishment action against Township for funds allegedly owing to the corporation. Schladweiler was permitted to intervene and raise a third party claim to the same funds. Thus, the real issue this case presented to the trial court was whether Township was indebted to the corporation or to Schladweiler individually. Coop's claim to the funds could be no better than the corporation's. *Nite Owl Corporation v. Management Services, Inc.,* 84 S.D. 521, 173 N.W.2d 451 (1970); *Egland v. Neill,* 75 S.D. 361, 65 N.W.2d 576 (1954).

On the basis of the evidence presented, the trial court concluded that the funds owed by Township were assets owing to the corporation. The propriety of this determination is a threshold issue preceding inquiry into the question of personal liability for corporate indebtedness.

The rightful claim to garnished funds is a question of fact to be resolved on the basis of the evidence presented. *See Stearns v. Holmstrom,* 75 S.D. 37, 58 N.W.2d 621 (1953). A trial court's finding of fact shall not be set aside unless it is clearly erroneous. *Matter of Estate of Althen,* 429 N.W.2d 745 (S.D.1988). In determining whether a trial court's finding of fact is clearly erroneous, the question is not whether this court would have made the same finding as the trial court. *Cun-*

*ningham v. Yankton Clinic, P.A.,* 262 N.W.2d 508 (S.D.1978). The question is whether, after reviewing all of the evidence, this court is left with a definite and firm conviction that a mistake was made. *Mettler v. Williamson,* 424 N.W.2d 670 (S.D.1988). In such a review, the successful party is entitled to the benefit of his version of the evidence and of all inferences fairly deducible therefrom which are favorable to the trial court's action. *Cunningham, supra.* The burden of establishing the incorrectness of the trial court's findings is on the appellant. *Hilde v. Flood,* 81 S.D. 25, 130 N.W.2d 100 (1964).

Based upon our review of the evidence presented in this case, we find that Schladweiler has failed to sustain his burden of establishing the incorrectness of the trial court's finding that Township was indebted to the corporation. To the contrary, we find several key facts supporting the trial court's finding. First, there is no evidence in the record that Schladweiler Brothers, Inc. was ever formally dissolved as a corporation under the provisions of SDCL ch. 47–7. Its articles of incorporation designated its period of existence as perpetual. Where its period of existence is not limited by its charter, a corporation exists indefinitely and until it is legally dissolved. *Forest Home Cemetery v. Dardanella Fin. Corp.,* 329 N.W.2d 885 (S.D.1983). Thus, contrary to Schladweiler's assertions, at the time the gravel hauling services were provided to Township, Schladweiler Brothers, Inc. was a legally viable corporation.

Second, the corporation's equipment was not sold to Schladweiler until November 1987, *after* the gravel hauling services were provided to Township. There is no evidence explaining how Schladweiler was able to provide gravel hauling services in August, prior to his purchase of the equipment in November.

Third, Schladweiler did not file a certificate that he would be doing business under a fictitious name until December 1987, well *after* the time the gravel hauling services were provided to Township. Again, the evidentiary record is silent as to how Ethan

Construction could submit a bill for services performed in August when it was not until December that Schladweiler indicated he would again be operating that business.

Fourth, Township's garnishee disclosure indicates indebtedness to "Schladweiler Brother's, Inc." for the majority of the debt for gravel hauling services. We agree with the trial court's assessment that this evinces Township's belief that it contracted with the corporation for these services. Although Township was billed for the services by "Schladweiler Construction," we find this inconclusive as the name is so ambiguous that it could refer to Schladweiler Brother's, Inc. As for the bill from "Ethan Construction", we again note the fact that this bill was issued some three months before Schladweiler indicated he would be operating this business. Accordingly, the evidentiary value of this bill must also be discounted.

Also inconclusive is the evidence concerning Schladweiler's issuance of payroll checks and filing of quarterly income tax returns and unemployment insurance reports in the second quarter of 1987. The testimony concerning these facts was extremely vague and ambiguous. The issuance of the checks and filing of the reports were never specifically linked to Ethan Construction Company. Moreover, they shed no light on the question of who performed the gravel hauling services in August. We decline to state that the trial court erred in failing to draw any conclusions from this evidence.

Based upon the foregoing considerations, we cannot state that the trial court was clearly erroneous in finding that Township was indebted to Schladweiler Brothers, Inc. Given the evidence presented, it was clearly reasonable for the trial court to infer that Schladweiler did not recommence actual operation of his own gravel business until November 1987 when he purchased the corporation's equipment. Given this inference, the only conclusion the trial court could reach is that the gravel hauling services performed for Township in August were performed by the corporation with the corporation's equipment.

ISSUE 2

Whether the trial court erred in giving priority to a subsequent judgment creditor when Schladweiler, by assignment, had an uninterrupted perfected first security interest in the assets of Schladweiler Brothers, Inc.?

■ As an alternative argument, Schladweiler contends that if the funds held by Township were assets of Schladweiler Brothers, Inc., he held a perfected security interest in those funds through assignment by the corporation's bank when he paid off the corporation's debt. As a secured creditor of the corporation, Schladweiler submits that he should have been given priority over Coop in their disputed claim to the funds held by Township.

As Schladweiler asserts, the fact that he, as guarantor, paid off the corporation's debt to the bank could give him the status of a secured creditor of the corporation under SDCL 57A–9–504(5):

> A person who is liable to a secured party under a guaranty ... and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party....

We note, however, that there is no evidence in the record of what collateral of the corporation was covered by the bank's security interest. Neither the bank's security agreement (UCC 2 Form) with Schladweiler Brothers, Inc. nor the bank's original financing statement (UCC 1 Form) were submitted as evidence to the trial court. Although a financing statement (UCC 3 Form) indicating the bank's assignment of its security interest to Schladweiler was submitted as evidence, there is no description of the collateral covered by the security interest in the statement. Finally, there was no testimony before the trial court setting forth what collateral was covered.

A trial court's findings must be supported by evidence. *See Potter v.*

*Anderson,* 85 S.D. 142, 178 N.W.2d 743 (1970). Here, there is no evidence that Schladweiler held a security interest in the accounts receivable of the corporation. Hence, there was no evidence on which the trial court could base such a finding. Accordingly, we find no error by the trial court in failing to accord Schladweiler priority as a secured party over Coop in their claim dispute over the funds held by Township.

Affirmed.

WUEST, C.J., disqualified.